UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 22-256** |
| v. | * | **SECTION: G** |
| **FOUAD K. ZETON** | * | |

\* \* \*

## FACTUAL BASIS

The United States and defendant **FOUAD K. ZETON** ("**ZETON**") stipulate and agree that the facts contained in this document are true and that they would have been proven beyond a reasonable doubt had this matter proceeded to trial. The United States and **ZETON** further stipulate and agree that these facts provide a sufficient basis for a plea of guilty to the charge that **ZETON** violated Title 18, United States Code, Section 371. These facts are offered for the purpose of establishing a sufficient factual basis to support the guilty plea and therefore do not necessarily describe all the details of the offense or **ZETON's** complete knowledge of the offense.

As described below, **ZETON**: agreed with another person to commit wire fraud (Title 18, United States Code, Sections 1343 and 1346), in that he agreed to execute, by causing wire communications to be transmitted in interstate commerce, a scheme to defraud others of money and the intangible right of honest services; knew the unlawful purpose of the agreement and joined in the agreement with the intent to further the unlawful purpose; and knowingly committed overt acts in order to accomplish objects of the conspiracy.

At all times referenced in this factual basis, **ZETON** resided in a house located in New Orleans, Louisiana. At all times referenced in this factual basis, Co-Conspirator A was a New Orleans Police Department ("NOPD") police officer.

AUSA *CM*
Defendant
Defense Counsel *DC*

In or around October 2019, **ZETON** falsely claimed to his home insurer ("Company-A") and to the NOPD that jewelry had been stolen from his house. Company-A eventually paid **ZETON** approximately $27,500 for the value of the falsely-reported stolen jewelry.

In or around October 2019, Co-Conspirator A informed **ZETON** that Co-Conspirator A could use his position as a police officer, his knowledge of insurance claim processing, and his connections to an art appraiser to facilitate a false claim to Company-A that valuable paintings had been stolen from **ZETON's** house.

Beginning in or about October 2019, Co-Conspirator A and **ZETON** devised, and agreed to engage in, a scheme to defraud Company-A out of money and to defraud the NOPD and the citizens of New Orleans out of Co-Conspirator A's honest services as a police officer. **ZETON** and Co-Conspirator A agreed, among other things, that: **ZETON** would falsely report to the NOPD that certain valuable paintings had been stolen from his home, when in truth these paintings were of materially lower value than reported and had not been stolen; Co-Conspirator A would respond to **ZETON's** residence to take a police report; **ZETON** and Co-Conspirator A would act out planned interactions to be captured on Co-Conspirator A's police body-worn video camera; Co-Conspirator A would create a police report documenting **ZETON's** false claim of stolen paintings; **ZETON** would falsely claim to Company-A that he had discovered that certain valuable paintings had been stolen from his home; Co-Conspirator A would pay a Nevada-based art appraiser to create a fraudulent appraisal that would overstate these paintings' values; **ZETON** would submit the police report and the appraisal to Company-A in support of the false insurance claim; in exchange for Co-Conspirator A's participation in the scheme (including Co-Conspirator A's official acts of creating and filing the police report), **ZETON** would pay Co-Conspirator A money from the insurance payout and would influence a high-ranking NOPD official to obtain a

2

AUSA _CM_
Defendant
Defense Counsel _DC_

promotion for Co-Conspirator A.

**ZETON** and Co-Conspirator A committed the following acts, among others, to execute the scheme and accomplish the conspiracy's objects:

- From on or about October 26, 2019, through on or about November 6, 2019, **ZETON** and Co-Conspirator A communicated by telephone approximately each day for the purpose of furthering the scheme.

- From on or about October 26, 2019, through on or about November 6, 2019, Co-Conspirator A and the appraiser communicated by telephone for the purpose of furthering the scheme.

- On November 6, 2019, at approximately 5:59 p.m., **ZETON** placed a telephone call to Co-Conspirator A.

- On November 6, 2019, at approximately 6:00 p.m., **ZETON** placed a 911 telephone call.

- On November 6, 2019, at approximately 6:42 p.m., in response to **ZETON's** 911 call, Co-Conspirator A, in his capacity as an on-duty NOPD officer, reported to **ZETON's** house and activated the recording feature of his police body-worn video camera.

- On November 6, 2019, during the body camera recording, outside **ZETON's** house, Co-Conspirator A pretended that he was unable to get **ZETON** to answer the door and requested over his police radio that **ZETON** be telephoned.

- On November 6, 2019, during the body camera recording, inside **ZETON's** house, **ZETON** and Co-Conspirator A pretended to have not been in frequent contact with each other.

- On November 6, 2019, during the body camera recording inside **ZETON's** house, **ZETON** falsely stated that certain paintings had been stolen from his house.

3



AUSA _____
Defendant _____
Defense Counsel _____

- On November 6, 2019, during the body camera recording inside **ZETON's** house, Co-Conspirator A pretended to have little familiarity with **ZETON's** purported discovery that paintings had been stolen.

- On November 6, 2019, during the body camera recording inside **ZETON's** house, Co-Conspirator A pretended to believe that certain paintings had been stolen from **ZETON's** house.

- On November 6, 2019, during the body camera recording inside **ZETON's** house, Co-Conspirator A wrote and passed a note to **ZETON** for the purpose of influencing **ZETON's** statements to be captured by the body camera.

- On November 6, 2019, during the body camera recording inside **ZETON's** house, Co-Conspirator A suggested a purported theory as to who may have stolen the paintings.

- On or about November 6, 2019, Co-Conspirator A created and filed a police report indicating that **ZETON** reported the theft of paintings with a combined value of $128,500.

- From on or about November 7, 2019, and continuing through and beyond December 2019, **ZETON** and Co-Conspirator A communicated by telephone with each other for the purpose of furthering the scheme.

- On or about November 22, 2019, **ZETON** caused Co-Conspirator A's November 6, 2019 police report to be transmitted to a claims adjuster retained by Company-A via a wire communication that traveled from the Eastern District of Louisiana to outside Louisiana.

- On or about December 5, 2019, Co-Conspirator A paid a sum of money to the appraiser.

- On or about December 10, 2019, **ZETON** caused the appraisal, which falsely valued the paintings at $128,500, to be transmitted to a claims adjuster retained by Company-A via a

4

AUSA _CM_
Defendant 
Defense Counsel _DC_

wire communication that traveled from the Eastern District of Louisiana to outside Louisiana.

- On or about July 30, 2020, **ZETON** falsely told Company-A's representative that he could not recall the identity of the person who had referred **ZETON** to the appraiser.

_____  3/2/23
CHANDRA MENON                    Date
Assistant United States Attorney

_____  3/2/23
DAVID I. COURCELLE               Date
Counsel for Defendant

_____  3/2/23
FOUAD K. ZETON                   Date
Defendant